IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| STERLING R. RIVERS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:12-cv-562 |
| JEFFREY SCOTT and LEBANON POLICE DEPARTMENT, | ) ) ) ) | Judge Trauger |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Sterling Rivers, a detainee held at the Davidson County Sheriff's Office – Criminal Justice Center ("CJC"), has filed a *pro se* complaint (ECF No. 1) against defendants Jeffrey Scott and the Lebanon (Tennessee) Police Department, asserting claims under 42 U.S.C. § 1983. The plaintiff also submitted an Application to Proceed *in Forma Pauperis* (ECF No. 2). The complaint is before the court for initial review pursuant to 28 U.S.C. §§ 1915(b)(2) and 1915A(a).

**I.  Factual Allegations in the Complaint**

The plaintiff alleges that on or about April 5, 2011, he" recorded" a 3rd District County Commissioner buying narcotics, apparently using his cell phone. (ECF No. 1, at 7.) He presented the recording to his lawyer, who allegedly called the FBI, with the plaintiff's permission. The plaintiff anticipated that the FBI would call him to request his assistance in pursuing criminal charges against the county commissioner, but the FBI has never contacted him.

On June 5, 2011, the plaintiff was the passenger in a vehicle that was pulled over on Sparta Parkway in Lebanon, Tennessee. David Valentine was driving the vehicle but he was apparently not the owner. The car was pulled over by defendant Jeffrey Scott, a police officer with the Lebanon Police Department. Scott was driving an ordinary black and white police car. The plaintiff claims, however, that he saw an undercover agent, later ascertained to be F.B.I. Agent Brett Shields, in an unmarked car behind the black and white police car.

Valentine produced a valid driver's license, registration and proof of insurance. Officer Scott went

back to his vehicle. When Officer Scott returned to the car in which Valentine and plaintiff were waiting, he asked if he could search it. The plaintiff asked why they had been pulled over and was told it was because the window tinting was too dark. The plaintiff told Officer Scott that he did not have permission to search the car, because having tinted windows did not provide a valid reason for doing so. The plaintiff states that after he stated, "no," "the next thing I know, bag up came with a '223' rifle. The officer with the rifle stood behind our vehicle." (ECF No. 1, at 8.)

The plaintiff had with him two cell phones: one did not have a battery in it but contained the original recording of the county commissioner buying drugs. The other phone, the one the plaintiff regularly used, also had a copy of the recording on it. When Officer Scott began yelling at the occupants of the vehicle to "get out of the car," the plaintiff was suddenly sure that the reason the car was pulled over was in order for the officers to obtain these recordings from him. (*Id.*) He claims he had been told by his lawyer that he should make more copies of the recording, and that "if they knew [the plaintiff] kept the only recording there is, . . . they would probably crush it and crush you [plaintiff]." (ECF No. 1, at 9.)

The plaintiff was scared at this point so he got out of the car. The officers on the scene immediately took his cell phones from him. The officers searched the vehicle and found concealed weapons in the trunk and console of the car. The plaintiff and Valentine were both arrested and taken to jail. The plaintiff posted a $200 bond and was released, but the police department refused to give the plaintiff or his lawyer the plaintiff's cell phones.

The plaintiff states that the car's tinted windows were a pretext for pulling over the vehicle. He asserts that the owner of the vehicle told him that he had had the car for a few years but had never been pulled over for tinted windows. The plaintiff also alleges that the police officer who pulled them over never did a "tint tester" on the windows. (ECF No. 1, at 10.) The plaintiff further states he was never informed on what charges he was arrested and that, although the arresting officer reported that he "smelled smoke," this was a lie and the officers who searched the vehicle never found any drugs. (*Id.*)

According to the plaintiff, the FBI never called back for more information about the county commissioner so the plaintiff "knew most definitely what was going on." (ECF No. 1, at 10.) Three months later the plaintiff was indicted. The plaintiff does not identify on what charges. The FBI "kicked doors in," looking for the plaintiff, saying "if he run shoot to kill." (*Id.*) The plaintiff was not at the house where the doors

were kicked in, but after he was told about the "shoot to kill" comment, he chose to go to Paris, Texas "so that [he] could be captured by agents that w[ere] less likely to kill [him] during [his] arrest." (*Id.*)  He was in fact caught and arrested, without incident, presumably in Texas.

The plaintiff states the indictment includes dismissed charges from the past.  The plaintiff claims that he is "pretty sure" "upon information . . . and my belief" that "Chris Wharton told the FBI agent(s) that was paying him to set people up, that I had the recording of the 3rd District Commissioner. . . .  I'm positive that Chris Wharton knew about it, (the recording) because I told him, and let him hear it myself.  Chris the inform[a]nt, completely entrapped me with duress, which was the fear that he installed into my heart and mind due to him beating me up in the past, for not buying drugs for him.  The fear also came from him being a high rank gang member that will kill if he is dishonored." (ECF No. 1, at 11.)

Based on all these allegations, the plaintiff asserts that defendant Jeffrey Scott "showed official misconduct by intentionally and illegally stopping Plaintiff Rivers and forcing the Plaintiff to exit the vehicle" (ECF No. 1, at 13) and conducting an unreasonable search and seizure in violation of the plaintiff's Fourth Amendment rights.  The plaintiff also alleges "cruel and unusual punishment" and "unnecessary and wanton infliction of pain" (*id.*), in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

The plaintiff alleges that the Lebanon Police Department, also named as a defendant, is "over" defendant Scott and therefore "is held accountable [for] Defendant Scott['s] illegal actions."  (ECF No. 1, at 14.)  The plaintiff also alleges that "lack of training and monitoring has allowed the Defendant's employee to be involved in illegal acts and false statements" that violated the plaintiff's constitutional rights.

**II.    Standard of Review**

Although *pro se* pleadings are to be liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e)(2), *sua sponte*, without prior notice to the plaintiff or service of process on the defendant, if the complaint fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*,549 U.S. 199 (2007).  A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are

clearly baseless. *Neitzke*, 490 U.S. at 327.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, the factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009) (citing *Twombly*, 550 U.S. at 555). A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008).

## III.    Law and Analysis

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    *Fourth Amendment Claim against Officer Scott*

With respect to his claim for a Fourth Amendment violation, the plaintiff has identified the right and alleges that it was violated by a police officer acting under color of state law. That is, he claims that Officer Scott deprived the plaintiff of rights and privileges secured by the United States Constitution, including the Fourth Amendment right to be free from unlawful searches and seizures. The allegations in the complaint, if proven to be true, are sufficient to suggest that the initial stop was unreasonable, and that the arrest and seizure were without probable cause. Moreover, the plaintiff alleges that he was never informed on what charges he was arrested and was never allowed to retrieve his cell phones, and it is unclear from the allegations whether the charges were dropped or pursued. The court finds that the plaintiff has stated a potentially viable claim under the Fourth Amendment, and is unable to determine at this stage whether such claim is barred by the doctrine established by *Heck v. Humphrey*, 512 U.S. 477 (1994), which bars any unlawful-search-and-seizure claim to the extent it would imply the invalidity of an underlying state arrest or conviction.

The court therefore finds, at this stage in the proceedings, that the plaintiff should be permitted to

pursue his Fourth Amendment claim against Officer Scott.

### B. Fourth Amendment Claim against Lebanon Police Department

Although the Sixth Circuit has not issued a clear ruling on the topic, it appears that under Tennessee law the Lebanon Police Department is not an entity subject to suit under § 1983. *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases holding that police departments and sheriff's departments in Tennessee are not proper parties to a § 1983 suit); *see also Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987) (holding that police departments are not independent government entities subject to suit under § 1983, but rather that they "are sub-units of the city government and are merely vehicles through which the city fulfills its policing functions"). The Lebanon Police Department is a division or branch of the City of Lebanon, which is an entity that is subject to suit under § 1983. The court will therefore construe the complaint liberally as asserting claims against the City of Lebanon itself. *Cf. State v. Elizabethtown Police Dep't*, No. 3:09-CV-569-H, 2010 WL 1196193, at *2 (W.D. Ky. March 23, 2010) (construing claims against the police department as made against the City of Elizabethtown as the "proper defendant").

Although a municipality may be a "person" subject to suit under § 1983, it is well established that § 1983 claims against a municipality cannot be based on a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Instead, a plaintiff must show that the city "maintained a policy or custom that caused the violation" of the plaintiff's rights. *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 562 (6th Cir. 2011). "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).

In this case, the plaintiff alleges first that the Lebanon Police Department is liable strictly because it supervises—is "over"—defendant Scott and therefore "is held accountable [for] Defendant Scott['s] illegal actions." (ECF No. 1, at 14.) As set forth above, however, a municipal entity cannot be liable solely on the basis that it employed a tortfeasor.

The plaintiff also asserts in the complaint that "lack of training and monitoring has allowed the Defendant's employee to be involved in illegal acts and false statements" that violated the plaintiff's constitutional rights. (*Id.*) The plaintiff does not offer any specific facts in support of his claim regarding the

police department's failure to monitor and train.  In the context of a civil rights claim, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983; some factual basis for such claims must be set forth in the pleadings.  *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Johnson v. Freeburn*, 29 F. Supp. 2d 764, 767 (E.D. Mich. 1998) (conclusory, unsupported allegations of a constitutional deprivation do not state a § 1983 claim).  Because the allegations regarding the police department's liability are wholly conclusory and unsupported, the claims against the police department—construed as asserted against the City of Lebanon—will be dismissed for failure to state a claim upon which relief may be granted.

        **C.**        **Remaining Claims against Officer Scott**

The plaintiff also asserts that he was subjected to "cruel and unusual punishment" and "unnecessary and wanton infliction of pain" (ECF No. 1, at 13), in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  The plaintiff goes to great lengths explaining how he is not in good health or very physically fit.  He does not attribute any of his conditions to Officer Scott, however, and there are no factual allegations in his complaint that support a claim that the plaintiff was subjected to the use of excessive force by any police officer, or that the plaintiff was subjected to the unnecessary or wanton infliction of pain.  The unsupported assertions of cruel and unusual punishment and the wanton infliction of pain are not sufficient to raise the plaintiff's right to relief above the "speculative level," even assuming that all the factual allegations in the complaint are true.  *Twombly*, 550 U.S. at 555.  These assertions are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" which the Supreme Court has held are not adequate to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The plaintiff's claims based on the excessive use of force will therefore be dismissed.

**IV.    Conclusion**

For the reasons set forth herein, the plaintiff's Fourth Amendment claim against Officer Scott will be permitted to proceed. The remaining claims will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 18 U.S.C. §§ 1915(e)(2) and 1915A(a), and *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir.1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

An appropriate order will enter.

Aleta A. Trauger
United States District Judge